UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————————

DIANNE BRADY,

       Plaintiff,

                                Case No.  1:11-CV-838

v.

                                HON.  GORDON J. QUIST

CHASE HOME FINANCE, LLC,

       Defendant.

_____/

**<u>OPINION</u>**

Plaintiff, Dianne Brady, filed a complaint in the Mason County Circuit Court against Defendant, Chase Home Finance, LLC (Chase), alleging various state law claims and a federal law claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et seq.*  All of the claims arise out of Brady's default on the mortgage loan on her real property located in Freesoil, Michigan, as well as Chase's efforts to foreclose on the mortgage through a nonjudicial foreclosure. Brady sought, and obtained, an ex parte temporary restraining order from the state court enjoining Chase from proceeding with the then-pending sheriff's sale.  On August 10, 2011 – the day prior to the scheduled show cause hearing in state court – Chase removed the case to this Court on the basis of both federal question and diversity jurisdiction.  To the Court's knowledge, Chase has taken no further action to proceed with the foreclosure.[1]

Brady alleges the following claims: (1) breach of contract; (2) promissory estoppel; (3) declaratory judgment; (4) permanent injunction; (5) violation of the Regulation of Collection Practices Act (RCPA), M.C.L. § 445.251; and (6) violation of RESPA.  Chase moves to dismiss all of Brady's claims pursuant to Fed. R. Civ. P. 12(b)(6).  In turn, Brady moves to amend her

———————————————

[1]On March 6, 2012, the Court entered an Order denying without prejudice Brady's motion for a preliminary injunction.  The Court denied the motion because Brady failed to show that Chase was taking steps to revive the foreclosure or that it was likely that Chase would foreclose before this case is concluded.

complaint pursuant to Fed. R. Civ. P. 15(a)(2).  Having reviewed the parties' written materials, the Court concludes that oral argument is unnecessary to an informed decision on the motions.  For the following reasons, the Court will grant Chase's motion to dismiss, deny Brady's motion to amend, and dismiss Brady's complaint with prejudice.

## I. BACKGROUND

The following facts are taken from Brady's complaint and accepted as true for purposes of the instant motion to dismiss.

On July 25, 2002, Brady purchased the property commonly known as 9860 N. US Highway 31, Free Soil, Michigan (the Property).  In connection with the purchase, Brady obtained a mortgage loan from Coldwell Banker Mortgage, secured by a mortgage on the Property.  In 2008, Chase became the servicer of Brady's loan.[2]  At that time, Brady was in default on her mortgage payments as a result of a financial hardship.  Between May 2008 and approximately June 2009, Chase offered Brady two loan modifications, which Brady did not complete.

In June 2009, Brady requested a loan modification under the Home Affordable Modification Program (HAMP), a federal program enacted pursuant to the Emergency Economic Stabilization Act, P.L. 110 110-343, 122 Stat. 3765.  HAMP was designed to assist homeowners in avoiding foreclosure by offering lenders incentives to offer borrowers modifications with more favorable terms.  *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012).  Pursuant to HAMP, the Secretary of the Treasury negotiates Servicer Participation Agreements with servicers such as Chase, which require servicers to identify eligible homeowners who are in default or will likely soon default and to modify the terms of their loans.  *Id.*  Under HAMP guidelines, a servicer

---

[2]Coldwell Banker Mortgage assigned the mortgage to JP Morgan Chase Bank on or about July 3, 2008.  (Def.'s Br. Supp. Ex. A.)  In turn, JP Morgan Chase Bank assigned the mortgage to Chase on or about September 27, 2010.  Subsequently, JP Morgan Chase Bank N.A. merged with Chase and became the successor to Chase, putting the mortgage back with JP Morgan Chase Bank, N.A.

follows three steps to determine whether a borrower is eligible for a modification.  First, the servicer determines whether the borrower meets certain threshold requirements.  Second, the servicer applies various changes in order to lower the monthly mortgage payment as close as possible to 31 percent of the borrower's monthly income.  Finally, applying a net present value test, the servicer determines whether it is more profitable for the lender to modify the loan or to allow it to go into foreclosure.  *See id.* at 556-57.  As part of this process, when the servicer identifies a borrower who may qualify for a HAMP loan modification, the servicer offers the borrower a two-step Trial Period Plan (TPP).  The first step of the process is a trial payment period, usually lasting three months, during which the borrower provides loan modification documentation to the lender and makes trial payments under the new loan repayment terms.  *See id.* at 557.  (Def.'s Br. Supp. Mot. to Dismiss Ex. B (TPP).)  The second step of the process is a permanent modification, which occurs if the borrower makes all of the payments in the modified amounts and complies with all of the requirements of the TPP.  (*Id.*)

Chase sent Brady a HAMP TPP, which required Brady to, among other things, make three monthly payments of $545.60 from July 1, 2009, through September 1, 2009.  Brady made all of the scheduled payments and provided Chase all of the requested information.  However, Chase never sent Brady a loan modification agreement, although Brady continued to make monthly payments in the amount specified in the TPP.

In September 2010, Trott & Trott, P.C., acting on behalf of Chase, sent Brady a notice pursuant to M.C.L. § 600.3205a, which requires foreclosing parties to, among other things, notify certain borrowers of the opportunity to meet with a housing counselor and to explore the possibility of a loan modification with the lender.  Brady requested a housing counselor, who in turn requested a meeting.  A meeting was held by telephone on December 6, 2010, in which Kate Tomasik of Trott & Trott, P.C. represented Chase.  On May 25, 2011, Trott & Trott P.C. sent Brady a letter notifying

her that she was not eligible for a loan modification. Thereafter, Chase commenced foreclosure proceedings and Brady responded with this lawsuit.

## II. MOTION STANDARD

Pursuant to Rule 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Although a court is normally precluded from considering matters outside of the pleadings in addressing a motion under Fed. R. Civ. P. 12(b)(6), courts recognize an exception for documents attached to or referenced in the complaint. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . so long as they are referred to

in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

### III. DISCUSSION

**A.    Motion to Dismiss**

**1.    Breach of Contract**

In Count 1 of her complaint, Brady alleges that she "entered into a contract [with Chase] to modify the existing mortgage and loan, whereby [Brady] agreed to make payments pursuant to the TPP, and upon the successful completion of that TPP, [Chase] agreed to provide Plaintiff with a permanent loan modification." (Compl. ¶ 54.) Brady alleges that although she complied with all of the requirements of the TPP, Chase breached the TPP by failing to provide her a permanent modification. Brady also alleges that Chase breached the implied covenant of good faith and fair dealing by failing to handle her account, payments, and communications in an acceptable and fair manner in accordance with the contract provisions.

#### *HAMP Does Not Bar Brady's Breach of Contract Claim*

As an initial matter, the Court addresses Chase's argument that, because HAMP provides borrowers no private right of action, Brady may not maintain a breach of contract action premised on a TPP – a HAMP-related document. Because Chase first raised this argument in its reply brief, the Court would normally not consider it. The Court will do so, however, because Brady was afforded the opportunity to address the issue in her supplemental brief.

Chase's argument is essentially an extension of the conclusion that a majority of courts have reached that HAMP does not provide a private right of action to borrowers. *See In re Lopez*, 446 B.R. 12, 21-22 (Bkrtcy. D. Mass. 2012) (noting that "a majority of courts have held that HAMP affords no private right of action"). This Court has reached the same conclusion. *See Wyler v. Bank of Am.*, No. 1:11-CV-132, 2011 WL 5361077, at *5 (W.D. Mich. Nov. 7, 2011). Without much

elaboration, Chase simply argues that because the TPP is a part of HAMP, the TPP cannot form the basis of a state-law breach of contract claim. The cases Chase cites for this proposition, however, are not convincing. The first case, *Wigod v. Wells Fargo Bank, N.A.*, No. 10-CV-2348, 2011 WL 250501 (N.D. Ill. Jan. 25, 2011), was recently reversed by the Seventh Circuit. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). The Seventh Circuit rejected the defendant bank's field and conflict preemption arguments as well as its "end-run" theory, which the Seventh Circuit characterized as "built on the novel assumption that where Congress does not create a private right of action for violation of a federal law, no right of action may exist under state law, either." *Id.* at 581. The court had little difficulty rejecting this argument, noting that "[t]he absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Id.* Chase's second case, *Baltazar v. Premium Capital Funding*, No. 2:11-CV-630 TS, 2011 WL 3841450 (D. Utah Aug. 26, 2011), is no more persuasive than the district court's now-reversed decision in *Wigod*. Without more, the *Baltazar* court merely states that the plaintiff's "claim for breach of contract, negligence and breach of the implied covenant of good faith and fair dealing are nothing more than disguised HAMP claims."[3] *Id.* at *4. The court fails to explain why the lack of an express or implied private right of action in HAMP precludes state law claims that simply incorporate some element of HAMP. Given the lack of any persuasive analysis to support Chase's argument, this Court agrees with those courts, including the Seventh Circuit, that have found that the lack of private right of action under HAMP does not precluded a plaintiff from maintaining a breach of contract claim based on a TPP. *See Picini v. Chase Home Fin. LLC*, __ F. Supp. 2d __, 2012 WL 580255, at *5 (E.D.N.Y. 2012)

---

[3] *Baltazar* is distinguishable, in any event, because the plaintiff in that case was not alleging breach of contract based on a TPP, but instead was alleging a third-party beneficiary claim based on the defendant's Servicer Participation Agreement with the federal government. *Baltazar*, 2011 WL 3841450, at *2.

("Defendants have not pointed to any 'rule that where a state common law theory provides for liability for conduct that is also violative of federal law, a suit under the state common law is prohibited so long as the federal law does not provide for a private right of action.'" (quoting *Fletcher v. OneWest Bank, FSB*, 798 F. Supp. 2d 925, 930-31 (N.D. Ill. 2011)); *Bolone v. Wells Fargo Home Mortg., Inc.*, No. 11-10663, 2012 WL 882894, at *4 (E.D. Mich. Mar. 14, 2012) (rejecting the defendant's argument that HAMP preempts state breach of contract claims based on a TPP).

### The TPP Did Not Ripen Into An Offer

The introductory paragraphs of the TPP explain the process for obtaining a loan modification as follows:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement") as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. . . .

> If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income . . . .  I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer.  *This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.*

(TPP at 1 (italics added).)    The TPP contains four sections addressing: (1) the borrower's representations; (2) the terms of the trial plan; (3) the modification; and (4) additional agreements. Section 2 provides, in relevant part:

> 2.    **The Trial Period Plan.** . . .
>
>             . . . .
>
> During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (I) the first day of

the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

. . . .

F.     If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement . . . the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G.     I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

(*Id.* § 2.F. and G.)  Finally, Section 3 states, in relevant part:

3.     **The Modification.**  I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except for late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D above, the Lender will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. . . .

(*Id.* § 3.)

As a federal court sitting in diversity, this Court applies Michigan substantive law.  *See*

*Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) ("Under the *Erie* doctrine,

federal courts sitting in diversity apply the substantive law of the forum state and federal procedural

law.").  Under Michigan law, a binding contract requires an offer, acceptance, consideration, and

8

"a meeting of the minds on all the essential terms." *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452-53, 733 N.W.2d 766, 770 (2006). Contracts should be construed to give effect to the intentions of the parties and to give a reasonable meaning to all provisions. *Klever v. Klever*, 333 Mich. 179, 186, 52 N.W.2d 653, 656-57 (1952). If the language of the contract is clear and unambiguous, the court should construe it according to its plain sense and meaning. *Grosse Point Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 198, 702 N.W.2d 106, 113 (2005).

Chase contends that Brady fails to state a breach of contract claim because the TPP did not guarantee that Chase would modify her loan and "multiple preconditions to the permanent loan modification were not satisfied." (Def.'s Br. Supp. Mot. at 6.) For example, Chase notes, Brady does not allege that she ever received an executed TPP from Chase or that Chase provided her a modification agreement, as required by Section 2.G. of the TPP. As support for its argument, Chase cites *Brown v. Bank of New York Mellon*, No. 1:10-CV-550, 2011 WL 206124 (W.D. Mich. Jan. 21, 2011), in which Judge Bell dismissed a breach of contract claim based on a HAMP TPP. The plaintiff alleged that the defendants breached the TPP by failing to explore other modification programs available to the plaintiff. *Id.* at *2. Judge Bell held that the plaintiff failed to state a breach of contract claim because the TPP did not guaranty that the plaintiff's loan would be modified, nor did it impose an obligation on the defendants to explore other loan modification programs that might be available to the plaintiff. *Id.* at *3.

Brady responds that although she received neither a signed copy of the TPP nor a modification agreement from Chase, Chase was obligated to provide her a permanent loan modification because she established her eligibility for the modification and made all of the required trial period payments, even beyond those required by the TPP. Brady points out that the TPP states that Chase would send her either a signed copy of the TPP or a notice that she did not qualify for the offer. Brady claims that the requirement for a signed copy conflicts with other provisions of the

9

TPP, which simply state that Chase would provide Brady a loan modification if she complied with all of the requirements and her representations in Section 1 remained true throughout the trial period. Brady argues that these conflicting provisions result in an ambiguity.  Brady further argues that the condition that Chase sign and return a fully-executed TPP to Brady was a condition precedent to Chase's obligation to perform under the TPP, the occurrence of which Chase was duty-bound to not prevent by failing to send Brady a signed copy of the TPP.  Brady cites *Darcy v. CitiFinancial, Inc.*, No. 1:10-CV-848, 2011 WL 3758805 (WD. Mich. Aug. 25, 2011), in which Judge Neff held that the plaintiff stated a breach of contract claim under a TPP with provisions virtually identical to those of the TPP at issue in this case.  The plaintiff in *Darcy*, like Brady, alleged that she signed and returned a copy of the TPP to the lender, that she complied with all of the TPP requirements and made all payments, but that the lender did not comply with its obligations to either send her a signed copy or written notice that she did not qualify for the program and to provide her a mortgage modification.  *Id.* at *2.  Judge Neff acknowledged that the defendants never provided the plaintiff with a signed TPP, but noted that "[o]ther courts . . . have recognized as contracts TPP agreements that were not signed by the lender."  *Id.* at *5 (citing *Belyea v. Litton Loan Servicing, LLP*, Civ. Action No. 10-10931-DJC, 2011 WL 28849 (D. Mass. July 15, 2011)).  After concluding that the TPP was a valid contract, Judge Neff rejected the defendants' argument that the clear and unambiguous language in Sections 2.F. and G. of the TPP granted the defendants the discretion to allow the TPP to expire without offering a modification, even if the plaintiff fulfilled all of the requirements and qualified for a modification.  In light of Section 3, Judge Neff found the TPP ambiguous and denied the defendants' motion to dismiss.  *Id.* at *6.

In its recent decision in *Wigod*, the Seventh Circuit held that the plaintiff stated a valid breach of contract claim under Illinois law.  Like Brady and the plaintiff in *Darcy*, the plaintiff in

*Wigod* alleged that she had complied with all of the TPP's requirements by submitting documentation, making all of the payments, and returning two copies of the TPP to the lender. *See* 673 F.3d at 558. In contrast to the instant case and *Darcy*, however, the lender in *Wigod* returned a fully-executed copy of the TPP to the plaintiff. *Id.* In analyzing the breach of contract claim, the court rejected the lender's argument that the TPP was not an enforceable offer to permanently modify the plaintiff's mortgage because the offer was conditioned upon the lender's further review of the plaintiff's financial information to ensure that she qualified under HAMP. The court noted that under Illinois law, an offeror can preclude a submission from becoming an offer by conditioning the formation of a contract upon some further action by the offeror. In such case, there is "no binding offer." *Id.* In contrast, the court observed, "when the promise is conditioned on the performance of some act *by the promisee* or a third party, there can be a valid offer." *Id.* (citing 1 Richard A Lord, *Williston on Contracts* § 4:27 (4th ed. 2011)). The court acknowledged that the TPP in fact conditioned the offer upon the lender sending the plaintiff a signed TPP, but it held that once the lender determined the plaintiff qualified for a modification and sent the plaintiff a signed TPP, it no longer had the ability to deny a modification if the plaintiff complied with her obligations:

> At the beginning, when Wigod received the unsigned TPP, she had to furnish Wells Fargo with "documents to permit verification of . . . [her] income . . . to determine whether [she] qualif[ied] for the offer." TPP ¶ 2. The TPP then provided: "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan *if I qualify for the Offer* or will send me written notice that I do not qualify for the offer." TPP ¶ 2 (emphasis added). Wigod signed two copies of the Plan on May 29, 2009, and returned them along with additional financial documentation to Wells Fargo.
>
> Under the terms of the TPP Agreement, then, that moment was Wells Fargo's opportunity to determine whether Wigod qualified. If she did not, it could have and should have denied her a modification on that basis. Instead, Wells Fargo countersigned on June 4, 2009 and mailed a copy to Wigod with a letter congratulating her on her approval for a trial modification. In doing so, Wells Fargo communicated to Wigod that she qualified for HAMP and would receive a permanent "Loan Modification Agreement" after the trial period, provided she was

11

> "in compliance with this Loan Trial Period and [her] representations . . . continue[d] to be true in all material respects." TPP ¶ 1.

*Id.* at 562. Contrary to *Darcy*, the *Wigod* court found no ambiguity in the TPP. It reasoned that the qualifying language in Section 2G. did not conflict with Section 3 because Section 2G. merely confirms that no valid modification *exists* until all of the conditions are met, whereas Section 3 obligates the lender to provide a modification if the borrower satisfies all her obligations under the TPP. *Id.* at 563.

   This Court finds the Seventh Circuit's analysis both reasonable and persuasive. That is, because the TPP warns the recipient that it "will not take effect unless and until both [the borrower] and the Lender sign it and Lender provides [the borrower] with a copy of this Plan with the Lender's signature," no offer is extended until the lender provides the borrower a copy with the lender's signature. By providing an executed copy to the borrower, the lender extends an offer and must provide a modification if the borrower complies with her obligations. Conversely, no offer exists if the lender fails to provide the borrower a signed copy. Michigan law is consistent with Illinois law on this point. *See Modern Globe, Inc. v. 1425 Lake Drive Corp.*, 340 Mich. 663, 668, 66 N.W.2d 92, 94 (1954) (en banc) ("Considering that the offer made by defendant's agent was conditional upon ratification by defendant's stockholders and that plaintiff, by its agents Teich and Hertel, had notice of this fact, the proposed acceptance by Teich could not create an enforceable contract until fulfillment of the condition."); *White Showers, Inc. v. Fischer*, 278 Mich. 32, 270 N.W. 205 (1936) (en banc) ("The making and delivering of a writing, no matter how complete a contract according to its terms, is not a binding contract if delivered upon a condition precedent to its becoming obligatory. In such case it does not become operative as a contract until the performance or happening of the condition precedent." (internal quotations omitted)).

In the instant case, the TPP provided that the plan would not take effect until Chase signed and returned a copy of the TPP to Brady. Because Chase never sent Brady a copy of a fully-executed TPP, the TPP never ripened into an offer that Brady could accept. Accordingly, Brady fails to state a breach of contract claim.[4] *See Soin v. Fed. Nat'l Mortg. Ass'n*, No. CIV 2:12-634 WBS EFB, 2012 WL 1232324, at *5 (E.D. Cal. Apr. 12, 2012) (concluding that because the lender never returned an executed copy of the TPP to the plaintiff, there was no "offer for a permanent modification," and thus "no contract for a permanent modification for defendants to breach").

### The Statute of Frauds Bars Brady's Breach of Contract Claim

As with its HAMP argument addressed above, Chase first raised its statute of frauds argument as to Brady's breach of contract claim in its reply brief. Although procedurally improper, the Court will consider the argument because the Court afforded Brady the opportunity to file a supplemental brief addressing the issue.

With regard to claims against financial institutions, Michigan's statute of frauds provides:

(2) An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:

(a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

(c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

---

[4] Brady's allegation regarding Chase's breach of the implied covenant of good faith and fair dealing is irrelevant because "no contract was ever formed." *Kelley v. Thompson-McCully Co.*, No. 236229, 2004 WL 1676760, at *8 (Mich. Ct. App. July 27, 2004) (per curiam).

13

M.C.L.A. § 566.132(2). This provision applies to actions against financial institutions based upon a promise to modify a loan and is "'unambiguous.'" *Ennis v. Wells Fargo Bank, N.A.*, No. 1:10-CV-751, 2011 WL 1118669, at *3 (W.D. Mich. Mar. 25, 2011) (quoting *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550, 619 N.W.2d 66, 72 (2000)). Moreover, it applies to any "claim–no matter its label–against a financial institution to enforce the terms of an oral promise to waive a loan provision." *Crown Tech.*, 242 Mich. App. at 550, 619 N.W.2d at 72.

The statute of frauds is an additional reason why Brady cannot maintain a breach of contract claim: the TPP was not signed by an authorized representative of Chase. Brady attempts to cure this defect by relying on the cover letter that accompanied the TPP and was signed "Sincerely, CHASE HOME FINANCE LLC." Brady's reliance on the cover letter is misplaced. Michigan courts interpret the requirement of an "authorized signature" as that of "an authorized representative" of the financial institution. *See Cadle Co. II, Inc. v. P.M. Group, Inc.*, No. 275099, 2007 WL 3119569, at *2 (Mich. Ct. App. Oct. 25, 2007) (per curiam). Because the cover letter was not signed by an authorized representative of Chase, the statute of frauds bars Brady's breach of contract claim.[5]

### 2.    Promissory Estoppel

In Count 2, Brady alleges a claim of promissory estoppel. A claim of promissory estoppel is an equitable remedy and requires that there be "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee, (3) which in fact produced reliance or forbearance . . . , and (4) in circumstances such that the promise must be enforced if injustice is to be avoided." *Ardt v. Titan Ins. Co.*, 233 Mich. App.

---

[5]Brady asserts that even if the statute of frauds bars her claim, she may proceed against Chase on a theory of equitable estoppel. Brady's equitable estoppel argument lacks merit, however, because the TPP said in plain terms that it would not become effective unless Chase provided Brady a copy of the TPP signed by Chase. It would have been unreasonable for Brady to believe that she could accept the offer even though she had not received a copy of the TPP signed by Chase. *See Adams v. City of Detroit*, 232 Mich. App. 701, 708, 591 N.W.2d 67, 70 (1998).

685, 692, 593 N.W. 2d 215, 219 (1999). "The promise must be definite and clear, and the reliance on it must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41, 761 N.W.2d 151, 166 (2008) (citing *Ypsilanti Twp. v. Gen. Motors Corp.*, 201 Mich. App. 128, 134, 506 N.W.2d 556, 559 (1993) (per curiam)).

Brady's promissory estoppel claim fails for two reasons. First, any reliance on Chase's promises of a loan modification would have been unreasonable, because the TPP expressly stated that Chase had to send Brady a signed copy of the TPP, which Brady concedes never occurred. Second, as with the breach of contract claim, the promissory estoppel claim does not escape the statute of frauds. *See Talton v. BAC Home Loans Servicing LP*, __ F. Supp. 2d __, 2012 WL 855975, at *13-14 (E.D. Mich. 2012) (citing *Crown Tech. Park*, 242 Mich. App. at 550, 619 N.W.2d at 72). Thus, the promissory estoppel claim must be dismissed.

### 3. Declaratory Judgment and Permanent Injunction

Brady's claims for declaratory and injunctive relief in Counts 3 and 4 are premised on Chase's alleged failure to comply with the provisions in Michigan's foreclosure by advertisement statute that require lenders to consider borrowers for loan modifications prior to conducting nonjudicial foreclosures. Before proceeding with a nonjudicial foreclosure, a lender must provide a notice to the borrower containing, among other things: (1) the reasons for the default and the amount due; (2) contact information of the mortgage holder, the mortgage servicer, or their designated agent and a designation of one of these persons (the designated person) as having authority to offer loan modifications; and (3) notification of an enclosed list of housing counselors and the borrower's opportunity to request a meeting within fourteen days with the designated person to discuss a modification, with the option of requesting a housing counselor to attend. M.C.L. § 600.3205a(1)(a)-(d). If the borrower requests such a meeting, foreclosure proceedings may not

occur until 90 days after the date that the notice is sent to the borrower.  M.C.L. § 600.3205(1)(e).

In addition, the designated person may request, and the borrower must provide, documents that are

necessary to determine whether the borrower is eligible for a modification.  M.C.L. § 600.3205b(2).

The designated person must provide the borrower with a copy of the calculations used to determine

whether the borrower is eligible for a loan modification and, "[i]f requested by the borrower, a copy

of the program, process, or guidelines under which the determination . . . was made."  M.C.L. §

600.3205c(5).  If the borrower is eligible for a modification, the mortgage holder or servicer may

foreclose only through a judicial foreclosure, unless the designated person has offered the borrower

a modification and the borrower failed to timely accept it.  M.C.L. § 600.3205c(6) and (7).  If the

borrower is not eligible for a modification, however, the mortgage holder or servicer may proceed

with a nonjudicial foreclosure.  M.C.L. § 600.3205c(6).

Brady alleges that Trott & Trott P.C. sent her a notice pursuant to § 3205a; she requested a

housing counselor; she provided the requested documentation; a meeting was held on December 6,

2010, with Kate Tomasik, an attorney with Trott & Trott P.C.; and she received a letter from Trott

& Trott P.C. notifying her that she was ineligible for a loan modification.  Brady claims, however,

that Chase failed to comply with the statute and may not foreclose by advertisement because: (1)

Trott & Trott P.C. had no authority to negotiate a loan modification; (2) Trott & Trott P.C. failed

to provide her with a copy of the program, process, or guidelines used to determine eligibility for

a modification and failed to prove her with a copy of the calculations used to determine whether she

qualified for a modification; and (3) Brady qualifies for a modification pursuant to M.C.L. §

600.3205c(1)(a).

Except for her allegations that Trott & Trott P.C. failed to provide her the required

information and calculations, Brady's conclusory allegations cannot withstand a motion to dismiss.

16

*See Dingman v. OneWest Bank, FSB*, No. 11-15706, 2012 WL 884357, at *9 (E.D. Mich. Mar. 14, 2012) (holding that the plaintiffs' conclusory statement that they qualified for a modification, "without offering any facts showing why they believe they qualified," was "insufficient to state a claim for relief"). Even if Brady's allegations sufficed to establish a claim, the remedy for an improper foreclosure is conversion of the nonjudicial foreclosure to a judicial foreclosure. M.C.L. § 600.3205c. As the court noted in *Adams v. Wells Fargo Bank, N.A.*, No. 11-10150, 2011 WL 3500990 (E.D. Mich. Aug. 10, 2011): "The plain language of § 600.3205c(8) limits [the borrower's] relief . . . . The governing provision allows specified borrowers to convert a foreclosure by advertisement to a judicial foreclosure; it does not allow those borrowers to avoid foreclosure altogether or set aside a completed foreclosure." *Id.* at 4. In the instant case, Brady seeks a declaratory judgment and a permanent injunction but she does not request a judicial foreclosure. *See Dingman*, 2012 WL 884357, at *8 (concluding that the plaintiffs failed to state a claim for violation of the foreclosure by advertisement statute because they had "not requested a judicial foreclosure" and "[u]nless the borrower files a complaint seeking such relief, which plaintiffs have not done, nothing prevents the lender from foreclosing"). Therefore, Brady's claims for declaratory and injunctive relief are subject to dismissal.

### 4. RCPA Claim

Brady alleges in Count 5 that Chase violated the RCPA.[6] The RCPA "prohibits abusive collection efforts . . . with respect to obligations arising out of a 'purchase made primarily for personal, family, or household purposes.'" *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005) (quoting M.C.L. § 445.251(a)). Brady alleges that Chase violated the RCPA

---

[6]The RCPA is also known as the Michigan Collection Practices Act. *See Harris v. World Fin. Network Nat'l Bank*, No. 10-14867, 2012 WL 1110003, at *12 (E.D. Mich. Apr. 3, 2012).

by: (1) "[m]aking inaccurate, misleading, untrue, or deceptive statements in communications to collect a debt"; (2) [m]isrepresenting the legal rights of the creditor or debtor"; and (3) "using a harassing, oppressive, or abusive debt collection method."  (Compl. ¶ 89.)  Chase argues that this claim must be dismissed because Brady fails to allege any facts to support what are essentially legal conclusions.  The Court agrees.  In ruling on a motion to dismiss a court "need not accept . . . legal conclusions as true."  *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011).  Brady's allegations merely parrot certain provisions of the statute, *see* M.C.L. § 445.252(e), (f)(ii), and (n), and fail to provide any factual "meat" for her bare-bones claim.  Brady contends that her claim properly incorporates by reference all of her previous allegations, which provide the basis for her claim.  Even so, none of Brady's preceding allegations establishes that Chase violated the RCPA as Brady alleges.  The crux of Brady's case is that Chase offered her the opportunity for a loan modification, which she accepted.  As discussed above, however, Brady's purported acceptance was ineffective.  Chase thus did not make any inaccurate, misleading, untrue, or deceptive statement by failing to offer Brady a loan modification pursuant to the TPP.  Accordingly, this claim will be dismissed.

## 5. RESPA Claim

In Count 6, Brady alleges that Chase violated RESPA by failing to acknowledge her qualified written requests (QWR) within twenty days and failing to respond to her QWRs within sixty days, as required under 12 U.S.C. § 2605(e)(1)(A) and (2).[7]  Chase argues that Brady fails to state a RESPA claim because she fails to allege facts showing that she suffered actual damages.  The

---

[7] Brady correctly alleges in her complaint that the twenty-day and sixty-day periods were shortened to five days and thirty days, respectively, by the Dodd-Frank Act.  *See* Pub. l. 111-203, Title XIV, §§ 1400(c), 1463(c), July 21, 2010.  Courts have noted some uncertainty as to the effective date of this provision.  *See Nikiforuk v. CitiMortgage, Inc.*, No. 11-10815, 2011 WL 7113469, at *5 n.3 (E.D. Mich. Dec. 27, 2011) (citing *Solan v. Everhome Mort. Co.*, No. 10-CV-2280-H (RBB), 2011 WL 456013, at *2 n.2 (S.D. Cal. Feb. 3, 2011)).  For purposes of the instant motion, however, the Court need not decide the issue.

Court agrees.  Courts have held that in order to maintain a RESPA claim, a plaintiff must allege that the violation resulted in actual pecuniary damages.  *See Pliam v. Cendant Mortg. Corp.*, Civ. No. 11-3720 (RHK/JSM), 2012 WL 1439035, at *3 (D. Minn. Apr. 26, 2012) ("While RESPA itself does not set a pleading standard, courts have interpreted the statute to require a showing of pecuniary damages in order to state a claim."); *Shum v. Experian Info. Solutions*, No. C 12-0496 PJH, 2012 WL 1376979, at *1-2 (N.D. Cal. Apr. 19, 2012) (noting that the actual damages alleged "must be pecuniary in nature" and the plaintiff's allegations of damage to his reputation and added cost of obtaining credit were "too conclusory to demonstrate that [the plaintiff] has sufficiently pled pecuniary damages").  Brady alleges that the damage she suffered from the alleged violations includes "not knowing the accuracy of any statements made by Defendant, and not knowing whether Defendant properly applied payments prior to the Agreement."  (Compl. ¶ 107.)  Such allegations are insufficient to show actual pecuniary damage.  *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 6294472, at *8 (N.D. Cal. Dec. 15, 2011) (holding that the plaintiff's allegations that she was harmed by not knowing the true owner of the note and whether her payments were properly applied were "insufficient to allege the pecuniary harm required by the statute").  Accordingly, Brady's RESPA claim must be dismissed because she fails to allege actual pecuniary damage.

**B.    Motion to Amend**

In response to Chase's motion, Brady has moved for leave to amend her complaint to address any pleading deficiencies.  Pursuant to Fed. R. Civ. P. 15(a)(2), a court "should freely give leave [to amend] when justice so requires."  A court may deny leave to amend on a number of grounds, however, including when the amendment would be futile.  *See Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 569 (6th Cir. 2010).  An amendment is futile if it could not withstand a Rule

19

12(b)(6) motion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Here, Brady's proposed amendment would not withstand a motion to dismiss.

Regarding her breach of contract claim, although Brady stated that her proposed amendment was intended to cure pleading deficiencies, Brady has supplemented her breach of contract claim by adding three additional alleged breaches. That is, Brady now alleges that Chase breached: (1) a 2008 contract to repay any past-due balance according to a repayment plan; (2) an August 2008 contract to permanently modify Brady's mortgage; and (3) an October 2008 contract to permanently modify Brady's mortgage. (Proposed 1st Am. Compl. ¶¶ 45, 47, 49.) Brady alleges that Chase breached all three contracts "by failing to accept payments under the agreement or apply the payments properly." (*Id.* ¶¶ 46, 48, 50.) Brady fails to allege whether these agreements were oral or written, nor does she attach copies of any written agreements. To the extent these alleged agreements were oral, Brady's claims would be barred by the statute of frauds, as discussed above. Moreover, Brady merely states that she entered into the contracts with Chase, but she fails to provide sufficient factual allegations to establish the existence of the alleged contracts, their terms, the parties' obligations, etc. Such conclusory allegations are insufficient to state a claim. *See Yaldo v. Deutsche Bank Nat'l Trust Co.*, No. 10-CV-11185, 2010 WL 4940024, at * (E.D. Mich. Nov. 30, 2010) ("The complaint merely states in conclusory terms that Yaldo was assessed illegal charges, and that he was assessed excessive interest rates, fees, penalties, and other illegal charges beyond 'what was allowed for in the contract.'"); *Johnson v. BNC Mortg. Corp.*, No. 09-14717, 2010 WL 3515800, at *2 (E.D. Mich. Sept. 8, 2010) (concluding that dismissal of the plaintiff's breach of contract claim was proper where the complaint failed to allege facts from which the court could determine (1) the existence of a valid contract; (2) the terms of the contract; (3) the nature of the

defendant's obligations under the contract; (4) the circumstances that gave rise to the breach; and (5) the specific ways in which the plaintiff was harmed).

Brady's promissory estoppel claim is essentially unchanged, except that she adds allegations relating to the repayment plan and the two additional loan modification agreements. Because these claims are based on promises to modify repayment of a loan, they are barred by the statute of frauds. *See Talton*, 2012 WL 855975, at *13-14; *El-Seblani v. OneWest, FSB*, No. 11-11178, 2011 WL 6309155, at *4 (E.D. Mich. Dec. 15, 2011). Moreover, the Court notes that Brady fails to allege how she relied to her detriment on the alleged promises.

As for Brady's claims for declaratory and injunctive relief based on Chase's alleged failure to comply with the loan modification provisions of the foreclosure by advertisement statute, while Brady's proposed amendment makes some minor changes to her allegations, Brady still fails to request a judicial foreclosure. Therefore, she would still fail to state a claim if the Court allowed the amendment.

Regarding her claim for violation of the RCPA, Brady seeks to remedy the lack of factual support in her original complaint by referencing various statements that Chase made. (Proposed 1st Am. Compl. ¶¶ 90-92.) These statements, however, offer little factual detail. In other words, Brady alleges only generally that they were made without specifics, such as who made them and when. More importantly, she alleges in conclusory fashion that the statements were inaccurate, misleading, untrue, or deceptive, without providing any *facts* from which the Court could infer why this is true. Brady's claim would also be subject to dismissal because she fails to allege that she "suffer[ed] injury, loss, or damage," as is required to maintain a claim under the RCPA. M.C.L. § 445.257(1); *see also Bolone v. Wells Fargo Home Mortg., Inc.*, __ F. Supp. 2d __, 2012 WL 882894, at *10

(E.D. Mich. 2012) ("The RCPA permits a person who suffers an injury . . . due to a violation of the Act to bring an action for damages or other equitable relief.").[8]

Finally, with regard to her RESPA claim, Brady adds the following paragraph in order to address the lack of allegations showing actual pecuniary damages in her original complaint.

> The Plaintiff suffered damage from Defendant's failure to comply with RESPA, including but not limited to paying additional and improper late fees or having those fees added to her account; paying improper inspection fees or having those fees added to her account; paying improper foreclosure fees or having those fees added to her account; being placed in foreclosure; the time and expense incurred in attempting to resolve the disputes she has with Defendant; the emotional distress and strain associated with being put through the foreclosure process, while not knowing the accuracy of any statements made by Defendant, not knowing whether Defendant properly applied payments made by Defendant [sic], and the uncertainty of not knowing what would happen to her home; and the costs associated with attempting to resolve her present dispute with Defendant.

(Proposed 1st Am. Compl. ¶ 111.)  Although more extensive than the allegations in her original complaint, Brady still does not sufficiently allege actual pecuniary damage.  *See Derusseau v. Bank of Am., N.A.*, No. 11 CV 1766 MMA (JMA), 2011 WL 5975821, at *4 (S.D. Cal. Nov. 29, 2011) ("Plaintiff's vague conclusory allegations that she suffered damages including, 'the over calculation and overpayment of interest on [her] loan, the costs of reparing Plaintif's credit, the reduction and/or elimination of [her] credit limits, costs associated with removing the cloud on her Property Title and setting aside the trustee's sale, and attorneys' fees and costs,' are insufficient, as they do not identify any specific identifiable damages Plaintiff suffered as a result of BAC's failure to respond.").  Moreover, Brady fails to provide any factual basis to show how Chase's alleged RESPA violations

---

[8] In addition, some of the alleged statements may be barred by the statute of frauds because they, in effect, seek to enforce a promise to renew or modify the repayment or performance of a loan. For example, in paragraph 91(b) Brady alleges that Chase "[r]epresent[ed] that the August 2008 loan modification agreement was not valid or enforceable because Plaintiff had not properly executed the documents." Determining whether such a statement was inaccurate or misleading could well require an examination of the terms of the modification agreement, thus implicating the statute of frauds. In light of the other grounds cited for denying leave to amend, the Court finds it unnecessary to address Chase's statute of frauds argument.

caused her to suffer the damages she alleges. *See Nix v. Household Fin. Corp.* (*In re Nix*), No. 10-01103-HB, 2012 WL 27667, at *10 (Bktcy. D.S.C. Jan. 5, 2012) (concluding that the plaintiff's "mere recitation of damages without any supporting facts as to how she was damaged is insufficient to establish a claim for violation of RESPA"); *Jones v. Vericrest Fin., Inc.*, Civil Action No. 1:11-CV-2330-TWT-CCH, 2011 WL 7025915, at *19 (N.D. Ga. Dec. 7, 2011) (noting that the plaintiff "fail[ed] to provide any factual support explaining how Flagstar's alleged violation of RESPA in October of 2010 (or any other alleged violation of RESPA by Defendants) caused her to suffer in excess of $180,000, which apparently includes her mortgage payments on the loan going back to 2005").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Chase's motion to dismiss in its entirety and deny Brady's motion for leave to amend. Brady's complaint will be dismissed with prejudice.

An Order consistent with this Opinion will enter.


Dated: May 24, 2012                     _____/s/ Gordon J. Quist_____
                                          GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE